UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:08-CV-121-F

| | | |
|---|---|---|
| AMANDA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| COREY HOUSTON, in his individual and official | ) | |
| capacity as Deputy Sheriff of Jones County, | ) | |
| JOHN E. HALL, in his individual and official | ) | |
| capacity as Sheriff of Jones County, JONES | ) | |
| COUNTY SHERIFF'S DEPARTMENT, and | ) | |
| JONES COUNTY, a body politic and corporate, | ) | |
| and OHIO CASUALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon the Motion for Summary Judgment [DE-44] filed by

Defendants Corey K. Houston in his official capacity, Defendant John E. Hall in his individual

and official capacity, and Ohio Casualty Insurance Company. All the parties to the action also

have filed a Joint Motion to Seal [DE-52]. Both motions are ripe for ruling.

## I. PROCEDURAL HISTORY

Plaintiff Amanda Jones initiated this action by filing a complaint in the North Carolina

General Court of Justice, Superior Court Division, New Hanover County, on July 3, 2008.

Defendants filed a Notice of Removal in this court on July 22, 2008. In the original complaint,

Plaintiff alleged, *inter alia*, that Defendant Cory K. Houston, while serving as a Deputy Sheriff in

the Jones County Sheriff's Department and after taking Jones into custody, directed her to bare

her breasts, demanded that she perform oral sex on him, and later threatened her when he learned

she had given a recorded statement about his actions. She alleged that Defendant Houston, along with the Sheriff John E. Hall, the Jones County Sheriff's Department, and Jones County, are liable to her pursuant to 42 U.S.C. § 1983 for the violation of her constitutional rights. Plaintiff also alleged state law claims against Defendant Houston for assault and battery, intentional infliction of emotional distress, or in the alternative, negligent infliction of emotional distress, false imprisonment, and punitive damages. She alleged a claim for negligent supervision against Defendants Hall, the Jones County Sheriff's Department, and Jones County.

Defendants Jones County and the Jones County Sheriff's Department moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On March 19, 2009, Plaintiff filed a motion to amend her complaint to add as a party-defendant the Ohio Casualty Insurance Company, the liability insurance carrier for Jones County and the surety for Hall's sheriff's bond. In an order filed on September 11, 2009, the court dismissed the claims against Jones County and the Jones County Sheriff's Department, but allowed Plaintiff's motion to amend the complaint. Plaintiff filed the Amended Complaint on September 14, 2009. Defendants Corey K. Houston in his official capacity, Defendant John E. Hall in his individual and official capacity, and Ohio Casualty Insurance Company filed in the instant motion for summary judgment on October 28, 2009. On December 4, 2009, the parties filed the Joint Motion to Seal.

## II. FACTS

The facts, stated in the light most favorable to Plaintiff, are as follows.

### A. Events of June 14-15, 2007

At some point prior to June 14, 2007, Plaintiff borrowed, without permission, her

2

grandmother's car. At the time, Plaintiff was nineteen years old and married with two children. Both she and her husband were unemployed, and she was living at her grandmother's house in Comfort, North Carolina.

Plaintiff's grandmother and father contacted the Sheriff's Department to report the missing car, and on June 14, 2007, called the Sheriff's Department more than once with reports of where Plaintiff, and her grandmother's car, might be located. Defendant Houston reported to work at the Jones County Sheriff's Department on June 14, and Sheriff Hall told him he was to arrest Plaintiff for unauthorized use of a motor vehicle. Based on the reports from Plaintiff's father, the Sheriff's Department had reason to believe that Plaintiff was in Onslow County. Accordingly, the dispatcher for the Jones County Sheriff's Department arranged for Defendant Houston to meet up with an Onslow County deputy sheriff.

Plaintiff, meanwhile, spent most of the day on June 14, 2007, using crack cocaine with her mother. While they used crack cocaine, Plaintiff and her mother spent the day at the house of James Bullock, located in Belgrade, Onslow County, North Carolina. In the very late evening hours of June 14, 2007 or early morning hours of June 15, 2007, Plaintiff's mother instructed Plaintiff to walk about mile or two down the road to pick up more drugs. Plaintiff left Bullock's house and began walking down the road, accompanied by another man, Julius Locklear.

As Plaintiff and Locklear walked down the road, Defendant Houston and the Onslow County deputy sheriff, both in their respective patrol cars, passed Plaintiff. Houston and the Onslow deputy turned around and stopped Plaintiff. Houston asked Plaintiff where her grandmother's car was, and she told him. Houston told Plaintiff to get in his patrol car and he searched her pocketbook. Escorted by the Onslow County patrol car, Houston drove to the house

3

where Plaintiff left her grandmother's car. After they arrived at the car's location, the Onslow County deputy left.

Defendant Houston then drove back into Jones County towards the Jones County courthouse in Trenton. On the way, he pulled off to the side of the road, and said he had forgotten to search her. Houston asked Plaintiff to pull her bra out and shake it, which she did, and then Houston asked her to lift her shirt. Plaintiff protested, and said a female officer should be present, but Houston said that would delay things. Plaintiff then complied with Houston's instructions. Houston placed her back in the patrol car, and drove Plaintiff to the courthouse.

At the courthouse, the magistrate set a bond for Plaintiff and informed her that she would have to return to the courthouse for a hearing at 9:00 a.m. that same morning. At the time, the Jones County Jail could not hold females, and Houston arranged to transport Plaintiff to the Pamlico County Jail. Although another female had been arrested that night, and also had a hearing at 9:00 a.m., Houston opted to only transport Plaintiff to the Pamlico County Jail.

While en route to Bayboro, North Carolina, Houston told Plaintiff that she most likely would go to prison because it was her second arrest for unauthorized use of a vehicle, but that he knew the district attorney and judge very well and could help her, and she would not have to go to jail and be away from her children. Houston then asked Plaintiff what she could do in return for him. He stopped the car on the side of the road, near a convenience store, took Plaintiff's handcuffs off, and placed her in the front seat of the patrol car. Plaintiff told Houston she would be a better mother, give him names of drug dealers, and get help for her drug problem. Houston–apparently not satisfied with Plaintiff's answer–then told her he was going into the convenience store, and when he came back, he needed an answer.

4

Houston returned to the vehicle and asked Plaintiff if she had an answer. She responded no, and he started driving towards Bayboro. While driving, he unzipped his pants, and told Plaintiff to perform oral sex on him. Plaintiff then performed oral sex on Houston while he drove the vehicle. Approximately twenty minutes later, they arrived at the Pamlico County Jail.

A few hours later, Houston returned to transport Plaintiff back to Trenton for her 9:00 a.m. court appearance. During the drive, Houston told Plaintiff he had a family too and that she better not tell anybody. There is no indication that Houston spoke to an assistant district attorney or judge about Plaintiff's case, but Plaintiff did receive a sentence of probation and was released.

**B. Jones County Sheriff's Department knowledge of the incident**

In September 2007, Jack Byrd, an owner of a garage in Jones county and the boyfriend of Plaintiff's mother, complained to Defendant Sheriff Hall and Major Reginald Wingate about Houston's actions. Plaintiff had confided the details of the incident to her mother, who in turn told Byrd. Hall indicated that he wanted Plaintiff's mother to contact the Sheriff's Department so he could hear the verify the story. Hall did not attempt to contact Plaintiff or her mother himself.

On October 26, 2007, Plaintiff had a court appearance in New Hanover County. That same day, she was picked up at the New Hanover County Jail by Detective Steven L. Thompson of the Jones County Sheriff's Department and driven back to Jones County for another court appearance. Byrd also had complained to Detective Thompson about an unnamed sheriff's deputy forcing Plaintiff to perform oral sex on him. Based on Byrd's description of the deputy, Detective Thompson thought he was talking about Houston. Accordingly, while he was driving Plaintiff to Jones County, Detective Thompson asked Plaintiff about the "rumor" that she had

5

been asked to provide oral sex to Houston, and with Plaintiff's permission, he used a tape recorder to record his interview of Plaintiff. After Plaintiff went to court in Jones County, she and Detective Thompson met with Sheriff Hall and she told him what had occurred when Houston arrested her.

On Saturday, October 27, 2007, Houston went to Sheriff Hall's home and told him that he had engaged in "sex with an inmate" and had been bothered by this ever since taking ethics training. Sheriff Hall said he was "shocked" by the admission, and although Houston did not identify Plaintiff by name, Sheriff Hall believed Houston was referencing Plaintiff. On Monday, October 29, Sheriff Hall contacted an assistant district attorney for Jones County, and the State Bureau of Investigation was called to investigate. Houston resigned his position the following day. Houston eventually was charged with violating state law, including N.C. Gen. Stat. § 27.7(a), which prohibits officers from having sexual relations with prisoners in their custody.

## C. Houston's history at the Jones County Sheriff's Department

Houston applied for the deputy sheriff position with the Jones County Sheriff's Department in 2005 after completing Basic Law Enforcement Training ("BLET"). He was hired by Tim Morton, then the Sheriff of Jones County, in October 2005. Houston estimates that while he worked under Tim Morton, he had approximately three or four complaints made against him by citizens. Houston does not specifically recall the details of the complaints, but says the complaints were from people who "didn't get their way" and therefore felt he had not done his job. There is no documentation of any of these complaints, and Houston was not disciplined by Morton for any of these complaints.

After Hall was elected in November 2006, but before he assumed the office of Sheriff of

6

Jones County in December 2006, a citizen filed a written complaint about Houston. Specifically, on November 28, 2006, Tammy Brinson Gonzalez came to the Sheriff's Department to complain about Houston's conduct toward her daughter, Kimberly Gonzalez, during a traffic stop shortly after midnight in front of the courthouse in Trenton.[1] Tammy Gonzalez said her daughter was uncomfortable with how Houston put his hands on her during the stop, and she also reported that Houston ordered Kimberly to shake her bra. She stated that Kimberly felt Houston purposefully took his time in issuing her a citation and tried to delay Kimberly.

Major Wingate recorded the complaint, and conducted the resulting investigation. He contends he interviewed Houston and another deputy sheriff, J.D. Seals, whom Houston called for back-up during the stop. According to Wingate's record of the investigation, Houston stated that he did a pat-down of Kimberly Gonzalez using the back of his hands for officer safety, and asked her to shake her bra to ensure that she was not carrying a weapon. Deputy Seals' recollection of the traffic stop corresponds to the account in Major Wingate's report; however, he also testified in his deposition that Kimberly Gonzalez was being belligerent and he would have arrested for her disorderly conduct. Major Wingate ended his investigation in January 2007, and concluded that the allegations against Houston were untrue and that there was no wrongful doing by Houston during the traffic stop of Kimberly Gonzalez and that the search of Gonzalez was justifiable on the basis of officer safety. Consequently, Houston was neither counseled or disciplined for the Gonzalez incident. Sheriff Hall, who had by that time assumed his office, was copied on Major Wingate's report.

Houston has a differing recollection of the Gonzalez traffic stop and the resulting

---

[1] Tammy Gonzalez was not present herself during the traffic stop.

7

investigation. Houston testified that he did not recall searching Kimberly Gonzalez and he did not tell her to shake her bra. He also testified that he was not concerned for his safety during the stop, although he does recall calling Seals for backup because Gonzalez was "real moody." He testified that he recalled that her complaint concerned him calling her a bitch during the stop, which he denied. He also says Sheriff Hall spoke to him about the incident, but that he cannot recall whether Major Wingate talked to him or not.

When Hall assumed the office of Sheriff, he reviewed Houston's personnel file, and reappointed him as a deputy sheriff. He did not receive any further complaints about Houston until Byrd told him about Plaintiff's allegations.

## D. Houston's previous interaction with Plaintiff

Houston testified that he had arrested, or assisted in the arrest of, Plaintiff twice before June 14, 2007. Houston contends that during his first arrest of Plaintiff, she sexually propositioned him in an attempt to get out of a ticket, but he refused her advances. He also testified that once Plaintiff was released from jail from that arrest, she told her family that Houston had propositioned *her*, and that she went to jail because she turned him down. Houston also testified that he told Major Wingate and Sheriff Hall that Plaintiff had propositioned him during the arrest. Sheriff Hall and Major Wingate deny ever being told about this incident. Plaintiff, for her part, testified that she has no recollection of Houston arresting her prior to the June 14, 2007, incident.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S.

8

242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

## IV. ANALYSIS

Defendants Hall, Houston, and Ohio Casualty Insurance Company make the following arguments: (1) the official-capacity claims under 42 U.S.C. § 1983 fail because Plaintiff cannot show a policy, practice or custom of the Officer of Sheriff of Jones County that caused the violation of her rights; (2) the individual-capacity claim under § 1983 against Hall fails because he had no personal involvement with plaintiff and he neither knew, or should have known, of Houston's improper conduct; (3) the state common-law claims against Hall and Houston in their official capacities are barred by governmental immunity; (4) the state common-law claim against Hall in his individual capacity is barred by public officer's immunity, and (5) any claim on Hall's surety bond fails because of a lack of claim on the bond and lack of evidence. The court will examine each of these arguments in turn.

9

## A. Section 1983 Official Capacity Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Ordinarily, to establish a claim under § 1983, a plaintiff most prove: (1) she was deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of rights was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40-59-60 (1999).

In this case, Plaintiff seeks to impose liability upon the Office of Sheriff of Jones County. Because local government units–like the Office of Sheriff of Jones County– qualify as "persons" for the purposes of § 1983, they can be liable for damages when they deprive citizens of federal rights. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). Moreover, a plaintiff's claim against a government official in his official capacity is treated as a claim against the government entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Consequently, Plaintiff's claims against Sheriff Hall and Houston in their official capacities are in reality against the Office of Sheriff of Jones County.

Although a local government entity may be held liable under § 1983, it is well settled that a local government entity cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. Rather, to establish liability of the entity, a plaintiff must show that: (1) a government actor deprived the plaintiff of her federal rights; and (2) the harm was the result

10

of municipal policy or custom. *Id.* "This requirement limits municipal liability under section 1983 to those actions for which the municipality is actually responsible by distinguishing between acts attributable to the municipality and acts attributable only to municipal employees." *Hill v. Robeson County,* ___ F.Supp.2d ___, No. 7:09-CV-5-D, 2010 WL 2104168 at *4 (E.D.N.C. May 20, 2010)(citing *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403-04(1997) and *Riddick v. Sch. Bd. of Portsmouth,* 238 F.3d 518, 523 (4th Cir. 2000)). In this case, the parties do not dispute, for purposes of summary judgment, that the alleged actions taken by Defendant Houston violated Plaintiff's rights. The parties do dispute, however, whether there is sufficient evidence of an official policy or custom of the Office of the Sheriff for Jones County which led to the constitutional violation.

A policy or custom for which a local government entity may be held liable may arise in four ways:

> (1) through an express policy, such as written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003)(quoting *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999)). In response to Defendants' motion for summary judgment, Plaintiff argues that a series of actions by Sheriff Hall demonstrates deliberate indifference "to the rights of any female that Houston would have contact with." Mem. in Opp. to Mot. for Summ. J. [DE-49] at p. 19. Specifically, Plaintiff contends: (1) Sheriff Hall should have conducted a more thorough investigation into the Kimberly Gonzalez complaint; (2) Houston should have been disciplined

11

for his search of Gonzalez; (3) Houston should have been more closely supervised after the Gonzalez incident, and (4) Houston should not have been permitted to arrest or transport Plaintiff after he reported she propositioned him. Finally, Plaintiff argues that the Office of the Sheriff for Jones County failed to comply with its own policies for investigating complaints against deputies, which "fostered an environment amongst the deputies where they felt immune from prosecution for their actions as no investigation and/or discipline occurred after the filing of Citizen's Complaints." Mem. in Opp. to Mot. for Summ. J. [DE-49] at p. 26.

To impose Section 1983 liability on the Office of the Sheriff of Jones County under a theory of deliberate indifference, Plaintiff must proffer evidence that a "decision [by the Office] reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411. "Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). *See also Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997)(explaining that decisions taken by a policymaker may be "clearly unfortunate, might perhaps be thought imprudent, or even be found legally negligent, but that does not suffice; only decisions taken with deliberate indifference to the potential consequences of known risks suffices to impose municipal liability on the basis that such decisions constituted official [municipal] 'policy' "). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S.at 410. Moreover, even if a plaintiff shows that the municipal action was taken with the requisite degree of culpability, she also "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at p. 404.

12

Against this backdrop, the court will address Plaintiff's theories of deliberate indifference.

### 1. Kimberly Gonzalez Complaint

Plaintiff contends Sheriff Hall demonstrated deliberate indifference with regard to the investigation of the Gonzalez complaint, his failure to discipline Houston after the Gonzalez complaint, and his failure to more closely supervise Houston after the Gonzalez complaint.

#### a. Investigation of Gonzalez complaint

First, Plaintiff contends that the evidence establishes that the investigation of the Kimberly Gonzalez complaint was a "sham." Plaintiff notes that Houston's most recent recollection of the traffic stop of Gonzalez and resulting complaint–that he never searched Kimberly Gonzalez and the basis of her complaint solely was that he had called her a bitch–conflicts with both Deputy Seals' recollection of the traffic stop and Gonzalez's complaint itself. Because Sheriff Hall accepted Major Wingate's report finding that Houston properly searched Gonzalez on the basis of officer safety, Plaintiff contends "Sheriff Hall chose to simply either believe Houston's version of what happened, even with Deputy Seals['] conflicting testimony or chose to simply ignore the complaint." Mem. in Opp. to Mot. for Summ. J. [DE-49] at p. 21. In fact, it shows that *neither* Major Wingate nor Sheriff Hall chose to believe Houston's version (if this indeed was the version he proffered *during* the investigation) or ignore the complaint. Instead, it shows that Deputy Seals' version of events were credited by Major Wingate and Sheriff Hall. Plaintiff has not articulated why, when allegedly presented with differing accounts, this single decision to believe the version espoused by Deputy Seals demonstrates that the investigation was a "sham" or shows deliberate indifference to the risk that

13

a constitutional violation would follow. *Cf. Beck v. City of Pittsburgh*, 89 F.3d 966, 974-75 (3d Cir. 1996)(determining that a jury could find that the City of Pittsburgh's procedures were inadequate to protect civilians from police misuse of force where the city department responsible for investigating complaints as a practice required "neutral" testimony–i.e., from someone not connected to either the officer or the complainant–in order to sustain an excessive force complaint).

### b. Failure to discipline

Next, Plaintiff contends that Sheriff Hall demonstrated deliberate indifference by failing to discipline Houston for the Gonzalez incident. Specifically, she notes that her designated expert testified that in his opinion Sheriff Hall should have placed a written warning in Houston's file and ordered him to attend training on sexual harassment and on when to conduct a search of an individual. *See* Mem. in Support of Mot. for Summ. J., Dep. of Tripp [DE-45-17] at pp. 69-73. By not doing so, Plaintiff contends that Sheriff Hall tacitly approved of Houston's inappropriate conduct with Gonzalez.

It is rare for municipal liability to attach based on the failure to discipline a single officer, especially for a single incident. *See, e.g., Meas v. City and County of San Francisco*, 681 F.Supp.2d 1128, 1142 (N.D. Cal. 2010); *Sexton v. Kenton County Detention Ctr.*, ___ F. Supp.2d ____, 2010 WL 1050058 (E.D. Ky. March 18, 2010). Where courts have allowed claims for municipal liability to go forward on the basis of failing to discipline a single officer, the individual officer normally has engaged in a *pattern* of unconstitutional conduct. For example, in *Hayward v. City of New Orleans*, No. Civ.A. 02-3532, 2004 WL 258116 (E.D.La. Feb. 12, 2004), the plaintiff proffered evidence that an officer who allegedly battered

14

her during an arrest was the subject of thirteen excessive force complaints and seven lawsuits over a nine-year period. *Id.* at *5. The District Court for the Eastern District of Louisiana observed:

> In most cases, the deficient training of one officer in one aspect of law enforcement does not evidence deliberate indifference to civil rights. Nor does the failure to discipline officers in a single case trigger municipal liability.
>
> The present case involves a single officer with multiple abuse complaints. Recent cases have left unresolved the question of whether a city's failure to discipline a *single* officer in light of *multiple* official abuse complaints can evidence an official policy of deliberate indifference to civil rights. Although *Monell* liability has yet to be imposed under this factual scenario, prior precedent indicates that a policy maker's failure to discipline an officer['s] conduct could result in municipal liability.

*Id.* at *6 (internal citations omitted, emphasis in original). Thus, because the plaintiff in *Hayward* proffered evidence of a pattern of "multiple" abuse complaints, summary judgment for the City of New Orleans was denied.

Similarly, in *Harris v. City of Pagedale*, 821 F.2d 499 (8th Cir. 1987), the Eighth Circuit Court of Appeals affirmed the jury's verdict against a city in favor of a plaintiff who had been sexually assaulted by a police officer. The plaintiff had proffered "copious evidence" of past sexual misconduct by city officers, especially the officer who raped the plaintiff, and that on "repeated occasions" city officials were notified of the offensive acts but failed to take any remedial action. *Id.* at 504-06. Here, however, there is no pattern of sexual misconduct by Houston. Instead, there is *one* prior incident for which Houston was not disciplined.[2]

_____

[2] To the extent Plaintiff contends there is evidence of a *failure to train* rising to the level of deliberate indifference, such an argument fails as a matter of law. To prove such a claim, a plaintiff must produce evidence of "specific training deficiencies and either (1) that inadequately trained employees engaged in a pattern of unconstitutional conduct or (2) that a violation of a federal right is a "highly predictable consequence of a failure to equip law enforcement officers

That is not to say, however, that this court cannot envision a set of facts where the failure to discipline an officer for one prior incident could constitute evidence from which a reasonable jury could find that a policymaker was deliberately indifferent to the risk that a constitutional violation would occur. The court is certain, however, that in order to constitute deliberate indifference the prior incident–which was not disciplined–has to involve a constitutional violation in the same dimension as the one giving rise to the lawsuit. Where, as here, there is a one-time ill-advised search of a female–especially where another officer is present and the method of the search was proper–the failure to discipline for the prior incident can constitute, at most, negligence. *See* Mem. in Support of Mot. for Summ. J., Dep. of Tripp [DE-45-17] at p. 69 (testifying although the search of Gonzalez was not necessary, the method of the search was proper). Plaintiff, therefore, has not proffered sufficient evidence to show that Sheriff Hall was deliberately indifferent for failing to discipline Houston.

---

with specific tools to handle recurring situations." *Hill*, 2010 WL 2104168 at *8. In this case, there is no pattern of similar constitutional violations. Nor is the second situation implicated, because it cannot be said that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). *See also Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996)(concluding that there was no"patently obvious need for the city to specifically train officers not to rape young women" even where policymakers had notice that an officer had a tendency to fraternize with young women); *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998)("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."). Moreover, Plaintiff is unable to show causation–that the failure to train Hall was the moving force behind her constitutional injury. It is difficult to perceive how the failure to retrain Houston on *when* to search an individual (the training suggested by Plaintiff's proffered expert) would have prevented–much less *caused*–Houston from sexually assaulting females by virtue of making them expose their breasts and demanding oral sex.

16

### c. Failure to supervise

Plaintiff also argues that "more adequate supervision of Houston's actions as a deputy were warranted based on the Gonzalez matter but instead no action was taken by Sheriff Hall." Mem. in Opp. to Mot. for Summ. J. [DE-49] at p. 22. Specifically, Plaintiff asserts: "A red flag should have been raised by Sheriff Hall regarding Houston . . . . Other deputies as well as dispatchers should have been alerted that Houston, if at all possible, should not have any interaction, by himself, with female prisoners/detainees." *Id.* There is no evidence, however, to support Plaintiff's assertion that Sheriff Hall was deliberately indifferent by failing to order that Houston have no interaction alone with female detainees.

Plaintiff insinuates that her designated expert, Jeffery Tripp, proffered such an opinion. There is nothing in the report prepared by Mr. Tripp, however, that indicates that Sheriff Hall should have ordered that Houston have no contact alone with females. *See* Mem. in Support of Mot. for Summ. J., Dep. of Tripp, Report of Tripp [DE-45-17]. Plaintiff's counsel did engage in the following exchange during the deposition of Tripp:

> Q.    The incident with Kimberly Gonzalez, after an investigation had taken place and regardless of what the findings were by the Deputy, or in this case Major Wingate on the investigation, would you, as a Sheriff, put what I would call inartfully a red flag on Houston related to the transportation of females?
> A.    Yes, sir, I believe I would have.
> Q.    And why would you do that?
> A.    Because of the nature of the complaint. The circumstances surrounding the stop didn't indicate, in my opinion, that a search was necessary. I felt like the search was out of place and that was the reason for my opinion in this.

*Id.* at p. 105. As the transcript reveals, there is no indication what a "red flag" would entail, and there certainly is no suggestion that a "red flag" means that Houston should have been prohibited

17

from having any interaction by himself with female prisoners and detainees. More to the point, Mr. Tripp's testimony does not suggest how the failure to raise this undefined "red flag"caused Houston to violate Plaintiff's rights. *See City of Canton v. Harris*, 489 U.S. 378, (1989)("In virtually every instance where a person has had his or her constitutional rights violated by a [municipal] employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."). In short, Plaintiff has not proffered sufficient evidence showing that Sheriff Hall was deliberately indifferent by failing to raise a "red flag" with regard to Houston's transportation of females or that the failure to raise a red flag caused the constitutional deprivation at issue in this case.

### 2. Failure to prohibit contact with Plaintiff based on prior interactions

In addition to the Gonzalez complaint, Jones also contends that Sheriff Hall's failure to adequately supervise Houston after having notice of her prior interaction with Houston constitutes evidence of deliberate indifference. Specifically, Plaintiff points to Houston's report to his superiors that Plaintiff had sexually propositioned him during a prior arrest in order to get out of jail, but was turned down. Plaintiff and her designated expert assert that the failure to prohibit Houston from arresting Plaintiff or transporting her alone–along with the failure to instruct dispatchers to not allow Houston to transport Plaintiff alone–after learning about the alleged sexual proposition by Plaintiff constitutes deliberate indifference.

It is unclear, however, how Houston's report that *Plaintiff* sexually propositioned *him*–and that he properly rejected her advances–would give Sheriff Hall notice that Houston himself had engaged in improper conduct or would engage in improper conduct leading to a constitutional violation in the future. If anything, Houston's report was an indication he would

18

respond in an appropriate manner to any overtures from female suspects. Under these facts, a reasonable jury could not find that the failure to prohibit contact between Houston an Plaintiff demonstrates deliberate indifference on the part of Sheriff Hall. Again, a jury could only find–at most–that Sheriff Hall's failure to prohibit contact constitutes negligence.

### 3. Failure to comply with policies regarding investigation

Finally, Jones asserts that Sheriff Hall failed to comply with the Jones County Sheriff's Office Law Enforcement Policy and Procedure Manual ("the Manual"), which "fostered an environment amongst the deputies where they felt immune from prosecution for their actions as no investigation and/or discipline occurred after the filing of Citizen's Complaints." Mem. in Opp. to Mot. for Summ. J. [DE-49] at pp. 26-27.

It is undisputed that the Manual explicitly provided that "all" citizen complaints alleging employee misconduct must be documented in a Complaint Log and investigated by the Sheriff's Office. *See* Mem. in Opp. to Mot. for Summ. J., Manual [DE-49-9] at pp. 1-2. Sheriff Hall testified that he receives approximately two to three citizen complaints about Jones County deputy sheriffs each week. *See* Mem. in Support of Mot. for Summ. J., Dep. of Hall [DE-45-16] at p. 48. Despite receiving, by his own estimates, at least 100 citizen complaints each year, the only complaint listed in the Complaint Log for 2006 and 2007 is Kimberly Gonzalez' complaint.

The failure to log the citizen complaints could indeed constitute evidence of deliberate indifference that caused a constitutional violation to Plaintiff *if* there were some evidence of the substance or merits of the complaints. For example, if the complaints concerned minor or petty disputes–as Houston characterized the prior complaints against him–that do not suggest that any discipline or retraining of deputy sheriffs would be required, it would be difficult to say that

19

Sheriff Hall's failure to record the complaint in the Complaint Log and conduct a formal investigation created an atmosphere whereby Houston, and other deputies, felt they could commit constitutional violations with impunity. In contrast, if some evidence suggested that the citizen complaints concerned constitutional violations by deputy sheriffs, which were not recorded or investigated and therefore not disciplined, then it is conceivable that Sheriff Hall's failure to strictly abide by the Manual created an atmosphere where the deputy sheriffs felt they could engage in constitutional violations with no consequence. *See, e.g., Beck*, 89 F.3d 966, 974-75 (noting that the investigatory procedures were superficial and formalistic and that the plaintiff had presented evidence concerning prior complaints *about excessive force*, and concluding that plaintiff had presented sufficient evidence from which a jury could find that the city's procedures were inadequate to protect civilians from police misuse of force).

Here, there is no such evidence as to the nature of the complaints not documented by Sheriff Hall, even though Plaintiff had the opportunity to depose Sheriff Hall and question him about the prior undocumented complaints. It would require pure conjecture from a factfinder to find that Sheriff Hall's failure to strictly abide by the Manual created an environment where deputy sheriffs felt they could inflict constitutional violations on citizens with impunity. Consequently, without evidence as to the nature of the prior complaints received by Sheriff Hall, Plaintiff cannot succeed on this theory of municipal liability.

Accordingly, the Defendants' Motion for Summary Judgment is ALLOWED as to Plaintiff's official-capacity claims under § 1983.

**B. Section 1983 claim against Sheriff Hall in his individual capacity**

Plaintiff also alleges a § 1983 claim against Sheriff Hall in his individual capacity for supervisory liability. In order to establish a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injuries to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)(internal citations omitted).

To establish the first element, knowledge, a plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* In turn, in order to establish a "pervasive" or "unreasonable" risk of harm, a plaintiff must proffer "evidence that the conduct is widespread, or at least has been used on several different occasions and the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

To establish the second element, "deliberate indifference," a plaintiff must show "a supervisor's 'continued inaction in the face of documented widespread abuses.' " *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)). The Fourth Circuit has counseled that this is a "heavy burden" because:

> [o]rdinarily, [a plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which

21

to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Slakan,* 737 F.2d at 373 (internal citations omitted).

The third element, causation, is established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (quoting *Slakan,* 737 F.2d at 376). "[T]he causal link may be supplied by tort principle that holds a person liable for the natural consequences of his actions." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983).

As discussed earlier in this order, there is insufficient evidence from which a jury could find that Sheriff Hall had actual or constructive knowledge that Houston had engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff. Furthermore, as this court already has noted, there is insufficient evidence from which a jury could find that Sheriff Hall acted with deliberate indifference, or that Sheriff Hall's action (or inaction) caused the constitutional violations at issue in this case. Consequently, the Motion for Summary Judgment is ALLOWED as to Plaintiff's individual-capacity claim against Sheriff Hall under § 1983.

## C. State law claims

In addition to her claims under § 1983, Plaintiff also alleges the following claims under state common law against Houston: assault and battery, intentional infliction of emotional distress or negligent infliction of emotional distress, false imprisonment and/or abuse of process, and negligent supervision. Plaintiff also alleges a claim for negligent supervision against Sheriff

22

Hall.

Defendants argue they are entitled to judgment on the state law claims against them in their official capacities because they are entitled to governmental and sovereign immunity, and because Plaintiff failed to state a claim on the bond. Additionally, Sheriff Hall argues that public officer immunity bars any claim against him in his individual capacity, and that Plaintiff has proffered insufficient evidence to support a claim for negligent supervision against him.

Because Plaintiff's claim for negligent supervision impacts some of Defendants' other arguments, the court will first determine whether there is sufficient evidence to support a negligent supervision claim.

### 1. Plaintiff has proffered sufficient evidence for her negligent supervision claim

Plaintiff alleges that Sheriff Hall was negligent in his supervision of Houston. To establish a claim for negligent supervision, a plaintiff must proffer evidence showing "the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. Privette*, 128 N.C. App. 490, 494-95, 469 S.E.2d 395, 398 (1998)(internal quotation omitted).

Although the court has concluded that Plaintiff has proffered insufficient evidence to support a finding of *deliberate indifference* on the part of Sheriff Hall, the court cannot come to a similar conclusion with regard to the negligent supervision claim. The court concludes that Sheriff Hall's own directive to Houston to personally arrest Plaintiff—with the knowledge of at least one prior complaint about Houston's conduct during a search of a female *and* his knowledge that Houston claimed to have been sexually propositioned by Plaintiff in the past—does constitute evidence from which a jury could find that Sheriff Hall was negligent in his

23

supervision of Houston. *See* Mem. in Support of Mot. for Summ. J., Dep. of Hall [DE-45-9] at

pp. 41-43 (testifying that Sheriff Hall sent him to arrest Plaintiff); *cf. Jones*, 104 F.3d at 627

(explaining that a police chief's decision to only discipline an officer who had been accused of

rape was not deliberate indifference, but may be found to be legally negligent). In the cases

relied upon Sheriff Hall to defeat Plaintiff's claim for supervisory liability, the supervisors had

no knowledge–constructive or otherwise–of any improprieties on the part of the employee. *See*

*Medlin v. Bass*, 327 N.C. 587, 398 S.E.2d 460 (1990)(explaining that the forecast was "devoid of

evidence" that the defendants knew or could have known of their employee's alleged pedophilic

tendencies where none of the references mentioned a previous alleged incident of sexual assault

against a student). Again, while Sheriff Hall's response to the Gonzalez incident and Houston's

report of Plaintiff's alleged proposition does *not* rise to the level of deliberate indifference, the

court cannot conclude the record is devoid of evidence that would support a negligent

supervision claim.

### 2. The negligent supervision claim against Sheriff Hall in his individual capacity is barred by public officer's immunity

Although Plaintiff has proffered sufficient evidence to support a claim for negligent

supervision against Sheriff Hall, the court concludes that any such claim stated against Sheriff

Hall in his individual capacity is barred because he is entitled to public officer's immunity.

North Carolina courts have recognized that a sheriff is a public officer and therefore may

be entitled to public officer's immunity. *Messick v. Catawba County*, 110 N.C. App. 707, 717-

18, 431 S.E.2d 489, 496 (1993)(collecting cases). "Generally, the doctrine of public officer's

immunity precludes public officers from being sued in their individual capacity for mere

24

negligence." *Id.* at 717, 431 S.E.2d at 496. Instead, public officers may be held personally liable only if " 'his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties.' " *Meyer v. Walls*, 347 N.C. 97, 112, 489 S.E.2d 880, 889 (1997)(quoting *Smith v. Hefner*, 235 N.C. 1, 7, 68 S,.E.2d 783, 787 (1952)).

Here, Plaintiff argues the public officer immunity does not apply because Sheriff Hall's actions, or failure to act, were the result of malice. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 891 (citing *Givens v. Sellars*, 273 N.C. 44, 159 S.E.2d 530 (1968)). A wanton act " 'is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.' " *Id.* (quoting *Givens*, 274 N.C. at 50, 159 S.E.2d at 535). In the instant case, as this court already has explained, Sheriff Hall's actions can amount to, at most, negligence, which is insufficient to overcome the bar of public officer's immunity. Accordingly, Plaintiff's claim for negligent supervision against Sheriff Hall in his individual capacity is DISMISSED.

### 3. Governmental or sovereign immunity

To the extent Plaintiff's alleges the state common law claims against them in their official capacity, Houston and Sheriff Hall raise the affirmative defense of sovereign or governmental immunity.[3]

"Sovereign immunity ordinarily grants the state, its counties, and its public officials, in

---

[3] A claim against a sheriff and his deputy in their official capacities is really one claim against the Office of Sheriff. *Boyd v. Robeson County*, 169 N.C. App. 460, 466, 621 S.E.2d 1, 5 (2005).

their official capacity, an unqualified and absolute immunity from law suits." *Phillips v. Gray*, 163 N.C. App. 52, 56, 592 S.E.2d 229, 232 (2004)("The doctrine of sovereign immunity bars actions against public officials sued in their official capacities. . . . Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity."). North Carolina law, however, allows for "two ways for a sheriff to be sued in his official capacity." *Smith v. Phillips*, 117 N.C. App. 378, 383, 451 S.E.2d 309, 313 (1994). First, pursuant to N.C. Gen. Stat. § 58-76-5, "a plaintiff may maintain a suit against a sheriff or other officer and the surety on their official bond for acts of negligence in the performance of their official duties." *Id.*[4] *See also Sumney v. Barker*, 142 N.C. App. 688, 691, 544 S.E.2d 262, 265 (2001)(explaining that the North Carolina General Assembly abrogated common law immunity where a public official causes injury through neglect, misconduct or misbehavior). *See also Hill v. Medford*, 357 N.C. 650, 588 S.E.2d 467 (2003)(per curiam)(adopting J. Martin's dissent in 158 N.C. App. 618, 582 S.E.2d 325, which stated: "As a public official, if sued in his or her official capacity, a sheriff is protected against tort actions by governmental immunity unless the sheriff purchases a bond pursuant to G.S. § 58-76-5, and then, can only be liable on tort claims to the extent of the amount of that bond"). Indeed, a sheriff is required by the state to purchase an official bond. N.C. Gen. Stat. § 162-8. Second, a sheriff may be liable "to the extent insurance has been purchased."

---

[4] N.C. Gen. Stat. § 58-76-5 provides:
Every person injured by the neglect, misconduct, or misbehavior of any . . . sheriff . . . may institute suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State, without any assignment thereof; and no such bond shall become void upon the first recovery, or if judgment is given for the defendant, but may be put in suit and prosecuted from time to time until the whole penalty is recovered; and every such officer and the sureties on his official bond shall be liable tot he person injured for all acts done by said officer by virtue or under color of his office.

*Smith*, 117 N.C. App. at 383, 451 S.E.2d at 313. *See also* N.C. Gen. Stat. § 153A-435. In this case, Sheriff Hall contends that Plaintiff cannot overcome the defense of sovereign immunity under either exception.

### a. Plaintiff has stated a claim against the statutory bond

Defendants, while recognizing that Ohio Casualty Insurance Company (the surety on the bond) is a party defendant to the action, note that Plaintiff has failed to allege an explicit claim against the bond. Defendants concede however, that *if* Plaintiff had alleged a claim against the bond, there is no governmental or sovereign immunity for such a claim.

As Plaintiff notes, however, this court allowed Plaintiff to amend the complaint so that she could add Ohio Casualty Insurance Company as a party, on the basis of Plaintiff's allegations that Sheriff Hall had waived sovereign, or governmental, immunity. *See* September 11, 2009 Order [DE-37]. The intent of Plaintiff, obviously, was to state a claim on the bond. Therefore, Plaintiff requests that she be allowed to amend the complaint to add a specific claim against the statutory bond.

To the extent that Plaintiff is moving pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to filed an amended complaint which will include a claim against the bond, the motion is ALLOWED. Plaintiff is DIRECTED to file an amended complaint, with the sole addition of the claim against the bond, within seven days of the filing date of this order.[5]

---

[5] Defendants also argue that Plaintiff cannot prove an essential element of a claim on the bond: that Sheriff Hall was negligent in his supervision of Houston. *See Stafford v. Barker*, 129 N.C. App. 576, 585, 502 S.E.2d 1, 6 (1998)(explaining that a plaintiff bears the burden, under N.C. Gen. Stat. § 58-76-5, of proving that the sheriff either intentionally engaged in misconduct or misbehavior in the performance of his duties, or that he acted negligently in the performance of those duties). As this court previously has explained, however, there is sufficient evidence to support Plaintiff's negligent supervision claim. Moreover, Defendants do not challenge the

27

**b. Defendant did not waive sovereign immunity through the purchase of liability insurance**

As this court already has observed, sheriffs may waive sovereign immunity through the purchase of liability insurance. Here, Sheriff Hall admits that at the time of the incidents that gave rise to this case, the office of Sheriff of Jones County was insured through a liability insurance policy provided by the North Carolina Association of County Commissioners Liability and Property Pool ("the NCACC Policy"). Sheriff Hall contends, however, that the terms of the insurance policy preserve governmental immunity.

Any waiver of sovereign or governmental immunity by virtue of the purchase of liability insurance is limited to the extent of the insurance coverage. *See Evans v. Housing Auth. of City of Raleigh*, 359 N.C. 50, 57, 602 S.E.2d 668, 674 (2004); *Satorre v. New Hanover County Bd. of Cnty. Comm'rs*, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004). Indeed, "[a] governmental entity does not waive sovereign immunity if the action brought against [it] is excluded from coverage under [its] policy." *Patrick v. Wake Cnty. Dep't of Human Serv.*, 188 N.C. App. 592, 595, 655 S.E.2d 920, 923 (2008). Accordingly, this court must examine the NCACC Policy itself to determine whether sovereign immunity has been waived. In so doing, this court is cognizant that North Carolinas courts follow "the traditional rules of contract construction." *Dawes v. Nash County*, 357 N.C. 442, 448, 544 S.E.2d 760, 764 (2002).

Section VI of the NCACC Policy is entitled "Law Enforcement Liability Coverage" and provides the following:

---

evidence of Houston's alleged misconduct in the performance of his duties, and the tort claims against him in his official capacity are, as Defendants note, in reality against the Office of the Sheriff of Jones County. Consequently, there also is sufficient evidence to go forward on Plaintiff's claim against Sheriff Hall and the statutory bond.

28

> The Pool will pay on behalf of the Covered Person all sums which the Covered Person shall become legally obligated to pay as money damages because of an Occurrence which results in personal injury, bodily injury, or property damage and occurring while a Covered Person is acting within the course and scope of the Covered Person's duties to provide law enforcement.
>
> . . .
>
> The Pool will pay damages for Personal Injury and/or Bodily Injury as a result of an Occurrence arising from sexual abuse, sexual molestation, sexual exploitation or sexual injury, which alleges that the Covered Person was negligent in hiring, training or supervision.

Policy [DE-45-3 through DE-45-6]. Within Section VI, however, the Policy also states:

> The parties to this Contract intend for no coverage to exist under Section VI (Law Enforcement Liability Coverage) as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under North Carolina law. It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

*Id.* at § VI(A). Moreover, the "Exclusions" section explicitly states "Section VI (Law Enforcement Liability Coverage) of this Contract does not apply to . . . any claim, demand or cause of action against any Covered Person as to which the Covered Person is entitled to the sovereign immunity or governmental immunity under North Carolina." *Id.* at § VI(F).

According to Defendants, the language of §§ VI(A) and (F) both unambiguously preserve sovereign immunity. Plaintiff, however, contends the exclusionary language in the NCACC Policy does not apply. Alternatively, Plaintiff argues the NCACC Policy as a whole is ambiguous or illusory.

With regard to Plaintiff's first argument, she maintains the exclusionary language in the NCACC Policy is not applicable because Sheriff Hall has in fact waived governmental immunity through the purchase of the statutory bond. A review of North Carolina cases, however, shows that the purchase of a statutory bond waives governmental immunity only to the extent of the

bond. *See, e.g., Sumney*, 142 N.C. App. at 690, 544 S.E.2d at 264 (holding that immunity was waived "to the extent of the bond required by G.S. § 58-76-5"). Indeed, the North Carolina Court of Appeals has explained the purchase of liability insurance is complementary to the statutory bond, and "insur[es] an adequate remedy for wrongs done to the plaintiff if . . . the bond does not provide an adequate remedy." *Smith*, 177 N.C. App. at 383, 451 S.E.2d at 314. Consequently, this court concludes, as Chief Judge Louise W. Flanagan also recently determined in a case interpreting substantially similar policy provisions, that the exclusion in the NCACC Policy is written so that immunity is retained for liability in any amount in excess of the amount covered by the statutory bond. *See Russ v. Causey*, No. 7:09-CV-17-FL, ____ F.Supp.2d ____, 2010 WL 3075505 at *14 (E.D.N.C. Aug. 5, 2010)(explaining that "[a]ny effective waiver of immunity through an insurance policy would have to be in addition to and separate from the waiver of the [statutory bond").

In *Russ v. Causey*, Chief Judge Flanagan also was faced with the second argument proffered by Plaintiff in this case: that the NCACC Policy is ambiguous and its provisions illusory because its coverage conflicts with its exclusions. *See id* at * 14. Upon examining policy provisions which were substantially similar, if not identical, to the NCACC Policy provision in this case, Chief Judge Flanagan rejected such a contention. *Id.* The court finds Chief Judge Flanagan's reasoning to be persuasive, and expressly adopts and incorporates the same to conclude that the NCACC Policy is neither ambiguous nor are its provisions illusory.

Accordingly, the court concludes the Defendants have waived sovereign immunity for the claims against them in their official capacity only to the extent of the statutory bond. Defendants

30

retain immunity suit to the extent Plaintiff seeks damages in excess of the amount of the statutory bond.

## V. MOTION TO SEAL

The parties also have jointly moved to permanently seal Exhibit 6 to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment and Exhibit 7 to Defendants' Memorandum in Support of their Motion for Summary Judgment. The parties state that they inadvertently failed to redact certain information required to be redacted under Rule 5.2 of the Federal Rules of Civil Procedure.

The Motion to Seal [DE-52] is ALLOWED. The parties are ORDERED to file redacted versions of those exhibits to be maintained on the record not under seal.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [DE-44] is ALLOWED in part and DENIED in part. Specifically:

1. Defendants' Motion for Summary Judgment is ALLOWED as to the § 1983 claim against Defendant Sheriff John E. Hall in his individual and official capacity, and against Cory K. Houston in his official capacity. Therefore, the § 1983 claim against Defendant Hall in his individual and official capacity and the § 1983 claim against Defendant Houston in his official capacity are DISMISSED.

2. Defendants' Motion for Summary Judgment is ALLOWED as to the affirmative defense of public officer's immunity, and Plaintiff's claim for negligent supervision against Defendant Hall in his individual capacity is DISMISSED.

3. Defendants' Motion for Summary Judgment as to the affirmative defense of sovereign immunity is ALLOWED in part. Defendants are immune from suit with regard to the claims asserted against them in their official capacity to the extent the alleged liability exceeds the amount recoverable under the statutory bond purchased by Sheriff Hall.

Furthermore, to the extent Plaintiff is moving pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to filed an amended complaint which will include a claim against the statutory bond, the motion is ALLOWED. Plaintiff is DIRECTED to file an amended complaint, with the sole addition of the claim against the bond, within seven days of the filing date of this order.

Finally, the parties' Joint Motion [DE-52] to Permanently Seal Exhibit 6 to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment and Exhibit 7 to Defendants' Memorandum in Support of their Motion for Summary Judgment is ALLOWED. The parties are ORDERED to file redacted versions of those exhibits to be maintained on the record not under seal.

SO ORDERED.

This the 28ᵗʰ day of September, 2010.

*James C. Fox*

James C. Fox
Senior United States District Judge

32